TERRI F. LOVE, Judge.
| ,The State appeals the juvenile judge’s order dismissing the State’s case against G.G., a juvenile, based on a prior determination that G.G. was incompetent to proceed to trial. We find the juvenile judge’s dismissal pursuant to La. Child. Code art. 876 an abuse of discretion in this matter, as no contradictory hearing was held wherein the juvenile judge determined by a preponderance of the evidence that the juvenile lacked the mental capacity to proceed. La. Child. Code arts. 832-838. We *624 therefore reverse and remand this matter to the juvenile court for further proceedings.
PROCEDURAL BACKGROUND
Appellee, G.G., is juvenile who was charged in 2007 with two counts of aggravated rape under La Rev. Stat. 14:42 and two counts of sexual battery under La.Rev. Stat. 14:43.1. Counsel for G.G. raised the issue of competency to proceed to trial, and in 2007, Judge C. Hearn Taylor ordered a Competency to Stand Trial Evaluation to determine G.G.’s mental capacity to proceed. The juvenile court |2appointed a sanity commission, which was composed of Dr. Dahlia Bauer and Dr. Rafael Salce-do. Dr. Bauer concluded that G.G. was unable to proceed to trial due to mental retardation, inability to understand the proceedings against him and assist counsel in his defense. Dr. Bauer specifically noted that G.G. could not comprehend the charges brought or the function of courtroom officials, nor could G.G. recall the details of his actions.
Also, Dr. Salcedo determined that G.G. was incompetent to stand trial and assist in his own defense for the same reasons cited by Dr. Bauer. At the August 14, 2007 competency hearing conducted by Judge Taylor, both parties stipulated that both doctors “found that the Juvenile is not competent to stand trial at this time.”
As a result, the juvenile court appointed Margot Hammond of Mental Health Advocacy to the matter. The Department of Health and Hospitals (“DHH”) was instructed to evaluate G.G. for restoration services. Thereafter, G.G. attended an Interagency Service Coordination Process, where he was evaluated and issued a family service plan.
DHH determined that G.G. “would not regain competency in the foreseeable future” despite restoration services, and restoration services were terminated by DHH. The record reflects that Judge Taylor noted at a status conference that “a prior determination was made that Restoration Services would not assist/enable this youth to rehabilitate. Accordingly the Court instructs the D.A. to make a determination on whether to proceed or not in this case.” In an April 11, 2008 |sletter from DHH to the court, G.G. was reported as a patient of New Orleans Mental Health Clinic for the prior three years and was diagnosed with schizophrenic disorder. The letter stated that at that time, G.G. was taking the drug Seroquel and was the recipient of medications management and family therapy.
In 2008, Judge Taylor referred G.G. to the Behavior Health Liaison Services Program (“BHLSP”) for he and his family to obtain community support resources. BHLSP prepared a report that included a case goal plan for G.G. to improve attendance at school, improve family communication and interaction, secure relationships with positive peer groups, be open to positive change, secure appropriate community resources to maintain current placement, and assist the family with addressing court orders in a timely manner.
In April 2008, the juvenile court held a status hearing where the court reset the matter “to allow Ms. [Marilyn Noble] to look into the possibility of having [G.G.] return home and services that would be put in place.” In May 2008, pursuant to a brief in-chambers bench conference among all counsel, the court ordered that the matter remain “status quo and all preceding orders remain in full force and effect pending motions, in writing by all counsel for available options regarding adjudication.” The last entry in the record by Judge Taylor was regarding a May 27, 2008, court setting, which was reset at the *625 request of the defense counsel. However the record does not reflect that it was held.
| ,tJudge Tammy Stewart[1] was assigned to preside over the matter, and in November 2009, Judge Stewart dismissed noting the following:
“noting that a prior determination was made that restoration services would not assist/enable this youth to rehabilitate, and based on the information provided to the Court through Ms. Marilyn Noble-Arnoult, the Court finds good cause to order this case CASE DISMISSED with prejudice pursuant to Article 876 of the Children’s code, noting that the youth has been deemed irrestorably incompetent due to mental retardation.”
The juvenile court also dismissed the sexual assault charges against G.G. pursuant to La. Child. Code Ann. art. 876 for good cause.
JUVENILE COMPETENCY STATUS
In dismissing the State’s case against G.G., Judge Stewart relied on La. Child. Code art. 876, which provides that the court may dismiss a petition on the basis of good cause. The State argues that the juvenile court failed to institute the proper proceedings under the Louisiana Children’s Code before dismissing the ease.
La. Child. Code art. 876 provides, in pertinent part, that “[f]or good cause, the court may dismiss a petition on its own motion, on the motion of the child, or on motion of the petitioner.” Although neither the Children’s Code nor the jurisprudence defines “good cause,” it generally means “[a] legally sufficient reason.” Bryan A. Garner, Black’s Law Dictionary, 235 (8th ed.2004);
In State ex. Reí. L.A., we stated the following:
“Although the juvenile court judge relied on La. Ch.C. art. 876 in dismissing these cases, we find the governing provisions in these cases are the Children Code articles providing the procedure for |determining capacity to proceed, La. Ch.C. arts. 832-838, which provide:
Article 832 provides that a juvenile’s mental incapacity to proceed is raised by filing a written motion. Article 832 further provides that upon the filing of such a motion the delinquency proceeding is stayed and no further steps can be taken until the juvenile is determined to have the mental capacity to proceed.
• The filing of such a motion raising the juvenile’s capacity to proceed triggers the juvenile court to order a mental examination under La. Ch.C. art. 833, which provides such an exam shall be ordered “at any time when the court has reasonable ground to doubt the child’s mental capacity to proceed.”
• Within seven days after the mental exam is ordered, the juvenile court is required to appoint a sanity commission; the sanity commission is then required to report to the court within thirty days on the juvenile’s mental status. La. Ch.C. art. 834. The order appointing the sanity commission is required to set forth the time and date of the contradictory hearing at which the juvenile’s capacity to proceed will be determined pursuant to La. Ch.C. art. 836.
• At that contradictory hearing, the report of the sanity commission is admissible, the members of the commission may be called as witnesses, and other evidence may be presented, (footnote omitted)
*626 • Following the mandatory contradictory hearing, if the juvenile court determines the juvenile presently lacks the capacity to proceed, then the available special dispositions are enumerated in La. Ch.C. art. 837 B and include: ‘Dismiss the petition in accordance with Article 876.’ La. Ch.C. art. 837 B(l).”
09-1029, 09-1030, pp. 2-4 (La.App. 4 Cir. 12/9/09); 28 So.3d 515, 516-18.
The issue on appeal in State ex. Rel. L.A. was whether the juvenile court erred in not performing a competency hearing before dismissing the case based on the incompetency of the defendants. Id., p. 2, 28 So.3d at 516. We noted the distinction between optional and mandatory language and cited La. Child. Code art. 107, which provides that use of the word “shall” indicates a mandatory requirement. Id., p. 3, 28 So.3d at 517. La. Child. Code art. 836 states that “the issue of mental capacity of the child to proceed shall be determined by the court after a contradictory hearing.”
Lin State ex. Rel. L.A., the juvenile judge relied on La. Child. Code art. 876 to dismiss the charges against the juveniles for good cause. Id., p. 2, 28 So.3d at 516. This Court found that La. Child. Code arts. 832-838 should have been consulted before the case was dismissed. Id., p. 7, 28 So.3d at 519.
Once a juvenile’s competency becomes an issue, the law mandates the filing of a delinquency petition and states that the “mental capacity of the child to proceed shall be determined by the court after a contradictory hearing.” La. Child. Code arts. 832 and 836. Dismissal pursuant to La. Child. Code art. 876 is available after the contradictory hearing wherein the juvenile court judge “determines by a preponderance of the evidence that the child lacks the mental capacity to proceed.” La. Child. Code art. 837.
According to La. Child. Code arts. 837.3-837.5, after DHH determined that G.G. “would not regain competency in the foreseeable future,” the juvenile court was required to hold another contradictory hearing to evaluate G.G.’s mental capacity to proceed within a six month, two year, or three year time span. “A juvenile’s incapacity to proceed is not good cause for dismissal absent compliance with the procedures outlined in the Louisiana Children’s Code articles for determining capacity to proceed.” L.A, 09-1029, 09-1030, p. 2, 28 So.3d at 516.
In their evaluations, Drs. Bauer and Sal-cedo found that G.G. had limited intellectual abilities and presented as a much younger person, and they ultimately diagnosed G.G. with mild to moderately severe mental retardation. Judge Taylor determined that G.G. lacked the capacity to proceed in this matter, and following j7the mandatory contradictory hearing, Judge Taylor appointed a representative from Mental Health Advocacy Services to G.G.’s case and ordered that DHH evaluate G.G. for restoration services as provided for in La. Child. Code art. 837(B)(3).
The court found that while DHH began restoration services, it was determined that restoration services would not assist/enable G.G.’s rehabilitation, and Judge Taylor recommended continued sessions by DHH with G.G. DHH informed the court by letter that G.G. was reported as being a patient of New Orleans Health Clinic for the past three years and was diagnosed with schizophrenic disorder.
Thus, from October 2007 to May 2008, Judge Taylor held several status conferences to monitor G.G.’s mental capacity to proceed, and in November 2009, after only reviewing the record with no new occurrences, Judge Stewart dismissed the State’s case with prejudice.
*627 We find that the special disposition option set forth in La. Child. Code art. 837(B)(1) of dismissing the petition under La. Child. Code art. 876 was unavailable to the juvenile judge given the juvenile court’s failure to determine G.G’s capacity to proceed. Accordingly, we find the juvenile judge abused her discretion and lacked good cause to dismiss the State’s case against G.G. We reverse and remand this matter for further proceedings consistent with this opinion.
DECREE
For the foregoing reasons, the judgment of the juvenile court is reversed, and this matter is remanded for further proceedings.
REVERSED AND REMANDED.

. Judge Stewart was elected to the Orleans Parish Juvenile Court to fill the vacancy created by Judge Taylor’s retirement.